NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2013-258


DIANA CAMIRE

v.

THE GUNSTOCK AREA COMMISSION

Argued: February 26, 2014
Opinion Issued: June 18, 2014


McLaughlin Law Office, P.C., of Laconia (Emily F. McLaughlin on the brief and orally), for the plaintiff.


Devine, Millimet & Branch, P.A., of Manchester (Thomas Quarles, Jr. and Leigh S. Willey on the brief, and Mr. Quarles orally), for the defendant.


CONBOY, J. The plaintiff, Diana Martinez (formerly Diana Camire), appeals an order of the Superior Court (O'Neill, J.) granting summary judgment in favor of the defendant, The Gunstock Area Commission (Gunstock), on the plaintiff's claims for damages for negligence and recklessness. We affirm.

The following facts are drawn from the trial court's order and the record, or are otherwise undisputed. On February 13, 2010, the plaintiff, a snowboarder, visited Gunstock's ski and snowboard area. Posted on the wall of the ticket kiosk was a thirty-five inch by forty inch sign that recited, in part,

the language of RSA 225-A:24 and also stated: "By purchasing and/or affixing a ticket to use our facilities, you are agreeing to accept, as a matter of law, all inherent risks of winter sports activities and agree not to sue Gunstock for NEGLIGENCE or any other legal claim." (Bolding omitted.). See RSA 225-A:24 (2011) (outlining responsibilities of skiers and passengers). In addition, the back of the lift ticket purchased by the plaintiff included language stating that, as a condition of using the ski area, the purchaser or user of the ticket agreed to release Gunstock, and its employees and agents from any legal liability, including, but not limited to, claims for negligence.

Later that day, between 11:15 a.m. and 11:30 a.m., the plaintiff was injured when she was snowboarding on a ski trail and another snowboarder struck her from behind. The snowboarder was employed by Gunstock during the 2009-2010 season as a snowboard instructor. At the time of the collision, he was snowboarding prior to his scheduled 11:45 a.m. "lineup" in anticipation of a 12:00 p.m. lesson. The plaintiff alleges that she suffered injuries as a result of the collision.

The plaintiff sued Gunstock, asserting three counts based upon vicarious liability for the instructor's alleged negligent and reckless conduct, and one count alleging that Gunstock was directly liable for negligently hiring, training, and supervising the instructor. The trial court granted Gunstock's motion for summary judgment on all of the claims. This appeal followed.

"In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." Sanchez v. Candia Woods Golf Links, 161 N.H. 201, 203 (2010) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." Id. (quotation omitted). We review the trial court's application of the law to the facts de novo. Id.

On appeal, the plaintiff argues that the trial court erred by determining that the liability releases barred her claims "in the absence of some evidence that [she] expressly agreed to [the] exculpatory language." She also contends that the trial court erred in finding that, as a matter of law, the instructor was not in Gunstock's employ at the time of the collision. She further asserts that RSA 225-A:24, I, "does not bar recovery for [a ski area] operator's negligent supervision of its employees and the negligence of its agents in violation of their duties as employees."

The defendant disputes the plaintiff's contention that the releases do not preclude its liability and that the instructor was working at the time of the collision. The defendant further asserts that, even if the instructor had been

"working at the time of the accident, because this accident was a skier-to-skier collision [—] an inherent risk of skiing, for which ski areas are immune [—] Gunstock would have immunity from [the plaintiff's] claims."

We recognize that, in the proceeding below, neither party, nor the court, addressed the applicability of RSA 225-A:24, I, to the plaintiff's claims. Ordinarily, we will not review arguments that were not timely raised before the trial court, Baines v. N.H. Senate President, 152 N.H. 124, 128 (2005), because "trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court," Petition of Guardarramos-Cepeda, 154 N.H. 7, 9 (2006) (quotation omitted). This rule, however, is not absolute. Id. As we have previously recognized, preservation is a limitation on the parties to an appeal and not the reviewing court. Id. The issue of whether a ski area operator has statutory immunity under RSA 225-A:24, I, presents a question of law that, in this case, is dispositive of the plaintiff's vicarious liability claims. Accordingly, in the interest of judicial economy, and because both parties addressed the issue during oral argument before this court, we will consider it. See id.

Whether RSA 225-A:24, I, precludes the plaintiff's vicarious liability claims is a question of statutory interpretation. "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Martin v. Pat's Peak, 158 N.H. 735, 738 (2009) (quotation omitted). "We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used." Id. (quotation omitted). "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." Id. (quotation omitted).

RSA 225-A:24, I, provides, in pertinent part:

> Each person who participates in the sport of skiing, snowboarding, snow tubing, and snowshoeing accepts as a matter of law, the dangers inherent in the sport, and to that extent may not maintain an action against the operator for any injuries which result from such inherent risks, dangers, or hazards. The categories of such risks, hazards, or dangers which the skier or passenger assumes as a matter of law include but are not limited to the following: . . . collisions with other skiers or other persons . . . .

(Emphasis added.). The plaintiff argues that the statute does not bar her claims because "collisions with other skiers or other persons" does not include collisions with employees of the ski area operator.

3

Contrary to the plaintiff's argument, the specification of "collisions with other skiers or other persons" in the enumerated categories of inherent risks plainly includes all person-to-person collisions. Cf. LaChance v. U.S. Smokeless Tobacco Co., 156 N.H. 88, 94 (2007) (interpreting "any person injured" broadly within context of Consumer Protection Act). As the United States District Court for the District of New Hampshire recently concluded:

> the "plain and ordinary meaning" of the [statute's] immunity provision could hardly be clearer: it identifies "collisions with other skiers or other persons" as one of the "risks, dangers, or hazards which the skier assumes as a matter of law." It makes no exception for collisions with skiers who are violating the [statute], nor does it except collisions with ski area employees, even when those employees are themselves violating the [statute] or otherwise conducting themselves in a negligent or reckless fashion.

Hanus v. Loon Mountain Recreation Corp., No. 13-cv-44-JL, 2014 WL 1513232, at *3 (D.N.H. Apr. 16, 2014) (ellipsis omitted). If we were to conclude, as the plaintiff urges, that the legislature intended to exclude collisions with ski area employees, we would, in effect, be rewriting the statute. This we decline to do. See LaChance, 156 N.H. at 94. Thus, we hold that, based upon the plain language of the statute, the legislature intended to include, as a category of inherent risk, collisions with ski area employees, regardless of whether they were working at the time of the collision.

The plaintiff relies upon Adie v. Temple Mt. Ski Area, 108 N.H. 480 (1968), to support her argument that a "ski area can be liable for an employee's negligence, despite the existence of statutory immunity." In Adie, we considered whether the statute barred "an action for negligent instruction against an operator who has undertaken to instruct skiers." Adie, 108 N.H. at 482. We concluded that the statute did not bar recovery for a ski area operator's negligence in ski instruction to a skier because "the statute does not regulate instruction in skiing by operators." Id. at 483-84. We noted that "[i]f the Legislature had intended to bar skiers from actions against an operator for negligent instruction . . ., some regulation of their operations in th[is] area[ ] would have appeared in the statute." Id. at 484. Here, unlike in Adie, the plaintiff's vicarious liability claims allege injuries caused by a "collision[ ] with other skiers or other persons," RSA 225-A:24, I; such claims are expressly addressed in the statute.

Moreover, as we have previously explained, the current statute "does not limit the risks assumed to those enumerated therein." Rayeski v. Gunstock Area, 146 N.H. 495, 498 (2001); see RSA 225-A:24, I (risks, hazards, or dangers "include but are not limited to" enumerated items). Thus, we disagree with the plaintiff to the extent that she argues that "collisions with other skiers

4

or other persons," RSA 225-A:24, I, excludes collisions with ski area employees because the legislature did not specifically identify them as an inherent risk of skiing, snowboarding, snow tubing, and snowshoeing.

Accordingly, because RSA 225-A:24, I, bars the plaintiff's vicarious liability claims as a matter of law, the trial court properly granted summary judgment to Gunstock on those claims. In light of our holding, we need not decide whether the instructor was acting within the scope of his employment at the time of the collision or whether the claims are also barred by Gunstock's liability releases.

The final count of the plaintiff's writ alleged negligence on the part of Gunstock in failing to properly hire, train, and supervise the instructor. Gunstock moved for summary judgment on this claim on the basis that the plaintiff could not establish a causal connection between her injury and the fact that the ski instructor worked for Gunstock. Although, on appeal, the plaintiff cites Trahan-Laroche v. Lockheed Sanders, 139 N.H. 483, 485 (1995), for the proposition that "[a]n employer may be directly liable for damages resulting from the negligent supervision of its employee's activities," she does not develop an argument as to why the trial court erred by granting summary judgment to the defendant on her direct negligence claim. As she has failed to brief this argument sufficiently for appellate review, we decline to review it. See Porter v. City of Manchester, 155 N.H. 149, 157 (2007); State v. Blackmer, 149 N.H. 47, 49 (2003).

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

5